THE PEOPLE *ex rel.* William H. Trobaugh, Collector,

*v.*

THE CHICAGO AND TEXAS RAILROAD COMPANY *et al.*

*Opinion filed October 23, 1906—Rehearing denied Dec. 5, 1906.*

1. TAXES—*municipality's indebtedness does not preclude a levy of taxes.* The fact that a municipal corporation has incurred indebtedness up to the full limit allowed by the constitution does not preclude it from levying taxes for any lawful corporate purpose within the limits fixed by the laws governing such municipal corporation.

2. SAME—*right of school board to levy tax to complete building.* If, after a school district has exhausted its power to borrow money for the building of a school house, the building is still incomplete, it may levy up to the statutory limit for building purposes, and continue to do so from year to year until a sufficient amount is raised to complete the building.

APPEAL from the County Court of Jackson county; the Hon. W. F. ELLIS, Judge, presiding.

JOHN VENABLE, State's Attorney, (W. A. SCHWARTZ, and HOSEA V. FERRELL, of counsel,) for appellant.

W. W. BARR, and F. M. YOUNGBLOOD, (J. M. DICKINSON, of counsel,) for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The county court of Jackson county sustained the objections of the Chicago and Texas Railroad Company, the St. Louis, Alton and Terre Haute Railroad Company and the Illinois Central Railroad Company to certain taxes levied by the board of education of the city of Carbondale and denied judgment therefor, which was duly excepted to by the People, and this appeal brings the action of the county court up for review in this court.

In April, 1904, at an election called and held for that purpose, a majority of the votes cast were in favor of a proposition to build a new school house in said district, which was to cost not less than $17,000. On the 7th of May following, a proposition to authorize the issuance of $17,000 in bonds to be used in the building of a school house was voted upon at an election called for that purpose, and the result was a majority favorable to the proposition. In accordance with this vote, on the 7th of July, 1904, the board of education passed a resolution authorizing the issue of bonds for $17,000 in denominations of $1000 each, maturing as follows: $1000 in 1907 and $2000 each year thereafter, up to and including 1915, said bonds to bear interest at the rate of five per cent from July 1, 1904. The resolution adopted also provided for an annual levy of taxes upon the property of the district in sufficient amount to meet the accruing interest and the principal of said bonds as they matured. On July 29, 1904, the board of education met and authorized the clerk and president to sign and deliver the bonds to the treasurer for registration. The bonds were duly registered and afterwards delivered to the purchasers and the proceeds applied toward the building of the new school house. A copy of this resolution was duly filed with the county clerk of Jackson county, and by virtue of the authority therein contained he extended $850 in taxes against the property in district 95 to meet the interest on the $17,000 that would become due on July 1, 1905. On July 26, 1904, the board of education filed the following certificate with the county clerk: "We hereby certify that we require the sum of $8500, to be levied as a special tax for school purposes, and $8500 for building purposes, on the taxable property of our district, for the year A. D. 1904." This certificate was duly signed by all the members of the board. Under the authority of this certificate the county clerk extended taxes at the rate of $2.15 for school purposes and $2.15 for building purposes,—a total rate of $4.30 on all the taxable

223—29

property of the district. The objectors paid all the taxes levied against their property for school purposes and a portion of the taxes levied for building purposes. That portion of the building tax paid was at a rate sufficient to raise the $850 to meet the interest due July 1, 1905. This rate which objectors paid was thirty cents on each $100 of the assessed value of objectors' property. As to the remaining $1.85 on each $100 valuation levied for building purposes the objectors claim that the same is illegal and void, because, first, there was no proper levy of any of the said taxes made by any or either of the proper authorities whose duty it is to levy school district taxes, as required by law; and second, that the $17,000 of bonded indebtedness was equal to five per cent of the assessed value of the property in said district, and that therefore any additional levy for building purposes is unconstitutional and the levy for that reason is void.

With respect to the first objection above made to the validity of this tax, counsel for appellees have failed to point out any objection to the form of the certificate made by the board of education or to the manner in which the county clerk extended said taxes by virtue of said certificate, and since the officers charged with the duty of levying and extending these taxes seem to have exercised unusual care so far as the formal observance of the statute is concerned, it is clear that there is nothing in this objection, and that the same should have been overruled.

The main contention of appellees is predicated upon the second objection. The section of the constitution which is relied on to render this levy void is section 12 of article 9, and is as follows: "No county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five percentum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such in-

debtedness." We have held that this section of the constitu-
tion is self-executing, and that it operates as a limitation
upon the power of municipal corporations to contract debts
in excess of five per cent of the assessed value of their prop-
erty as determined by the last preceding assessment for
county and State taxes. *City of East St. Louis* v. *People,*
124 Ill. 655; *Baltimore and Ohio Southwestern Railroad
Co.* v. *People,* 195 id. 423.

We have often had occasion to determine what particu-
lar transactions amounted to "becoming indebted," within
the meaning of the clause of the constitution now under con-
sideration. In *City of Springfield* v. *Edwards,* 84 Ill. 626,
speaking of this clause in the constitution, we said (p. 632) :
"The prohibition is against becoming indebted,—that is,
voluntarily incurring a legal liability to pay, *'in any manner
or for any purpose,'* when a given amount of indebtedness
has previously been incurred. It could hardly be probable
that any two individuals of average intelligence could under-
stand this language differently. It is clear and precise, and
there is no reason to believe the convention did not intend
what the words convey. A debt payable in the future is, ob-
viously, no less a debt than if payable presently; and a debt
payable upon a contingency, as, upon the happening of some
event, such as the rendering of service or the delivery of
property, etc., is some kind of a debt, and therefore within
the prohibition. If a contract or undertaking contemplates,
in any contingency, a liability to pay, when the contingency
occurs the liability is absolute,—the debt exists; and it
differs from a present, unqualified promise to pay, only in
the *manner* by which the indebtedness was incurred. And
since the *purpose* of the debt is expressly excluded from con-
sideration, it can make no difference whether the debt be for
necessary current expenses or for something else." It was,
however, held in the case from which we make the above
quotation, that where liabilities are created and appropria-
tions made which are within the limit of the revenue accru-

ing to meet them, they are not debts within the meaning of the prohibition of the constitution, subject only to the qualification that the tax must be actually levied, and the issuing or accepting of a warrant or order on the treasury for its payment must operate to prevent any liability to accrue on the contract against the corporation.

Even if it be conceded that the $17,000 of bonded indebtedness brought the school district's debts up to the constitutional limit, still we fail to see how the levying of this tax for building purposes can be said to be an addition to the indebtedness of the district. The levying of a tax by the proper municipal authorities is not contracting municipal indebtedness. On the contrary, it is a means provided by the law by which municipal corporations can raise the money with which to pay their debts and other proper demands against them. Section 202 of chapter 122 (Hurd's Stat. 1905, p. 1823,) provides: "For the purpose of establishing and supporting free schools for not less than six nor more than nine months in each year, and defraying all the expenses of the same of every description, for the purpose of repairing and improving school houses, of procuring furniture, fuel, libraries and apparatus, and for all other necessary incidental expenses in each district, village or city, anything in any special charter to the contrary notwithstanding, the directors of such district and the authorities of such village or city shall be authorized to levy a tax annually upon all the taxable property of the district, village or city not to exceed two and one-half per cent for educational and two and one-half per cent for building purposes, * * * the valuation to be ascertained by the last assessment for State and county taxes."

Under the above section of the School law the board of education of this school district had the power to levy up to the full limit of two and one-half per cent for building purposes, when, as in this case, the building of a new school house has been legally determined upon. It nowhere ap-

pears in the record before us how much the school house would probably cost. The only statement in the record upon that subject is that the electors had voted to build a school house to cost not less than $17,000, but whether it would cost more, and if so, how much more, the record does not disclose. It is shown that the walls of the building were up at the time of the hearing of these objections, and that the work had been paid for, so far as the same had been completed, out of the proceeds of the bonds and some other funds which were on hand, but it nowhere appears that the amount of money available for this building, exclusive of the $8500, would be sufficient to complete or pay for the same. It is testified to by the clerk of the board of education that the building purposes for which this $8500 was levied was the new school house which had been authorized by vote of the electors in April, 1904, and for which the $17,000 in bonds had been issued; that there was no other building under contemplation; and the inference is very clear that it was for the purpose of completing this building that the levy was made. If, after the school district has exhausted its ability to borrow money for the purpose of building a school house, it is found that the building is still incomplete, there is no doubt of the power of the board to levy up to the statutory limit for building purposes, and continue to do this from year to year until a sufficient amount of revenue is raised to complete the building. We are of the opinion that the fact that a municipal corporation is indebted up to the constitutional limit of five per cent does not prevent such municipality from levying taxes for any lawful corporate purpose within the limits fixed by the laws governing such municipal corporations. To hold otherwise would be to deprive all municipal corporations that were indebted up to the constitutional limit, of the only means provided by the law by which such corporations can pay their debts or defray their current expenses.

It is suggested by counsel for appellees that the real purpose of the board of education in making this levy of $8500 was to equip the school building with furniture, appliances and apparatus necessary to complete the building and prepare it for the use of the school. There is no evidence in the record that there is any intention to misappropriate any portion of this levy.

The judgment of the county court is reversed and the cause is remanded, with directions to the county court to overrule the objections and to enter judgment for the amount of the unpaid taxes.

*Reversed and remanded, with directions.*